United States Court of Appeals
For the First Circuit

2018 JUN 22 A 11: 59

JEAN C. FERNANDEZ-GARAY,
    Petitioner/Appellant,

v.

UNITED STATES,
    Respondent/Appellee.

United States District Court
District of Puerto Rico
Civil No. 16-1058
Crim. No. 12-678
Honorable Judge
Gustavo A. Gelpi

## MOTION FOR CERTIFICATE OF APPEALABILITY

COMES NOW, Defendant/Petitioner, Jean C. Fernandez-Garay ("Fernandez"), pro se and in forma pauperis, respectfully requests the issuance of a Certificate of Appealability ("COA") as regards the denial by the district court of Fernandez' motion under §2255.

In support Fernandez will show the following:

1. If a motion under §2255 is dismissed at the district court level, the decision can be appealed. However, to appeal, Fernandez must receive permission from the district court or the court of appeals in the form of a COA. Under federal rules the district court must make an order denying the issuance of a COA when the order is issued.

2. There was no Magistrate Judge Report and Recommendation for the federal district court Judge. Therefore there was no "Objection to the Magistrate's Report and Recommendation" supported by "Points and Authorities" and the time limitation does not apply in these proceedings.

3. In determining the right to initiate appeal review of the dismissal of the motion under §2255, the district and circuit court should limit its examination to a threshold inquiry into the underlying merits of the claim. **Slack v. McDaniel**, 529 U.S. 473, 481 (2000).

- 1 -

4. Fernandez need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). Fernandez can satisfy this standard by demonstrating that jurists of reason disagree with the district court's resolution of his constitutional claim or the jurist could conclude the issues presented are adequate to deserve encouragement to proceed further. Slack supra at 484.

5. Fernandez requests this COA both of the district court and the circuit court of appeals pursuant to the rules.

6. Appellate review of a federal Sentence "is limited to determining whether [a sentencing decision is] reasonable." Gall v. United States, 128 S.Ct. 594 (2007). To that end, "the appellate court must review the Sentence under an abuse-of-discretion standard." Id. at 597. Where, as in this case, the challenge "is within the Guideline range," the appellate court may, but is not required to apply a presumption or reasonableness." Id. at 597.

7. When reviewing the reasonableness of a federal sentence, a court "must first ensure that the district court committed no significant procedural error." Gall, 128 S.Ct. at 597. Such errors include "selecting a sentence based on clearly erroneous facts." Id.; see also United States v. Gonzalez-Castillo, WL959984 (1st Cir. April 9, 2009). This is consistant with the general dictate, recognized by this Court, that "there is no doubt that a criminal defendant has due process right to have the Court consider only accurate information when imposing sentence." United States v. Tucker, 404 U.S. 443, 447; United States v. Torres, 541 F.3d 48, 51 (1st Cir. 2008)("selecting a sentence based on clearly erroneous

- 2 -

facts" is a form of error "amounting to an abuse of discretion" by the district court in its imposition of sentence).

8. These principles are relevant to the instant case. Unequivocally, the district court factored into its assessment of the "serious" nature and circumstances of Fernandez' offense. It perceived facts that the defendant's crime, possession of a weapon, included "Mr. Fernandez also pointed the gun that he was carrying at a Police of Puerto Rico officer" (Sentencing page 9). The court expressly based its perception of this alleged threat upon the unsupported statement of the probation officer. But a review of the record shows both the defense and the government did not agree with that conclusion. Moreover, the undercover officer made no indication that he was police. Quite the contrary, the officer could be the individual who was shooting or an opposing gang member.

9. In complaining that the district court committed procedural error and thereby abused its sentencing discretion, Fernandez points out that the court's otherwise appropriate consideration of the nature and circumstances of his offense included the outlier of pointing the gun and the suggestion of a threat. The facts on the record do not support this conclusion. Let's review the facts of the intervention of the police, as follows: a) the police were driving an unmarked car, b) the police were in plain clothing, as proved by the fact that when confronting the first arrested individuals, they had to tell him they were police, at which point he fled, c) the police officer was running toward Fernandez and Fernandez was likewise running toward the police, d) Fernandez stopped as did the police, e) Fernandez threw his drugs, money and ammunition to the

- 3 -

police officer in an effort to surrender anything of value, assuming that he was being robbed, f) Fernandez ran away and discarded his weapon. All the evidence shows resignation and withdrawl from the scene. The police officer never felt threatened, never drew his gun, never called for backup; all he did was knock Fernandez to the ground and arrest him.

10. Did Mr. Fernandez raise his gun in self-defense?

11. Did Mr. Fernandez raise his gun to balance his body so he could throw his backpack to the unidentified police officer?

12. Two things are indisputable: 1. Fernandez did not know he confronted by a police officer; and 2. Fernandez was not a threat to a trained police officer experienced in this very situation.

13. The district court denied due process when they refused to allow Fernandez to present a defense to the allegation that he was not presenting a threat to a "police officer" nor pointing a gun in a threatening manner. This is denial of a Constitutional right "that reasonable jurist could debate whether the petitioner should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." **Miller-El v. Cockrell**, 537 U.S. 322, 336-37 (2003).

14. Where the district court denied this issue on procedural grounds without evaluating the merits of the underlying claim, a court should grant a COA. **Slack** at 529 U.S. 484-85.

15. The issue as regards "pointing" did not occur in the plea agreement negotiation and only became an issue at sentencing. The Presentence Investigation Report ("PSR") included one sentence that

- 4 -

was capitalized and bolded:

> This Honorable Court made reference to, I suspect, to what is stated in the presentence report, Your Honor, at Page 4, Paragraph 6, it states that, "Mr. Fernandez-Garay allegedly pointed a weapon at a local police officer," Your Honor. First of all, that statement was in the PSR, Your Honor, with (sic) is in bold, was contained in the charging document, the initial charging document only, Your Honor. **No evidence whatsoever has been presented here by any local agents, anyone who witnessed that or actually saw that, Your Honor.** (Sentencing, pages 12 and 13)

Fernandez was never advised by Counsel that the issue was relevant to the sentencing proceedings.

16. Fernandez could not read English and was totally dependant on Defense Counsel, Thomas Trebilcock ("Trebilcock") as regards the PSR.

17. It is clear from the record that Trebilcock was completely unprepared as regards this issue: a. "I would like to go back and think about that fact for a second." (Sentencing Transcript Page 13) b. "Please allow me to finish preparing my record ... I would like to prepare a little more ... I would like to say a little more if possible." (Page 15) c. "But if I could complete the record," (Page 16)

18. Trebilcock was severely reprimanded by the district court for failing to object to the PSR and the introduction of the "pointed" comment about the gun.

19. Fernandez' Sixth Amendment rights were violated when Trebilcock failed to object to an incorrect assessment by the probation officer that resulted in a doubling of his sentence.

20. Ironically, Trebilcock states this fact as his final declaration before the district Court: "This is a violation of

- 5 -

Mr. Fernandez' due process and Sixth Amendment process."

21. It is the law that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes. **United States v. Wade**, 458 F.3d 1273, 1277 (11th Cir. 2006).

22. Trebilcock's behavior, comments, and admission prove conclusively that he had failed to object to a crucial fact, that was untrue, and therein prejudiced Fernandez. The record is clear are embarrassing as regards Trebilcock's ineffective assistance.

23. Failure to object to the incorrect conclusion of the probation officer falls "below the Constitutional norm" **Scarpa v. Dubois**, 38 F.3d 1, 8 (1st Cir. 1994).

24. The doubling of the agreed sentence based only on the single issue of "pointing" is prejudice.

25. After being ridiculed by the district court and advised to appeal the sentence, Trebilcock filed a feckless appeal that this Honorable Court deemed untenable.

Counsel "failed to bring up objections in a timely fashion and such (sic) waived said objections." (Memorandum page 5). Ironic-ally, in the appeal brief filed by defense counsel he raised a similar argument without ever realizing that he was admitting ineffective assistance. In the appeal brief defense counsel states:

Once the Court has finished, counsel for Mr. Fernandez proceeded to object to the sentence (Id.; App. pp. 70-71). Counsel addressed the matter of the district court's emph-asis on the facts related to Fernandez allegedly pointing the pistol at the PRPD officer. Said fact had been corro-borated by the officer, but counsel believed that the district court in its fact-finding role should choose the facts it relies upon for sentencing based on whether they were plausible based on a standard of preponderance of the evidence. The district court disagreed and from that point on the court interrupted and/or cut counsel off mid-sentence no less than nine (9) times. (Id. App. pp. 71-75)

> Thus, counsel was not able to address or object to any
> other matter related to the procedural or substantive
> reasonableness of Mr. Fernandez' sentence. And, as this
> has stated, "a lawyer ought not be required to persist
> stubbornly when the judge has made it perfectly clear
> that he does not wish to hear what the lawyer has to say."
> **United States v. Toribio-Lugo**, 376 F.3d 33, 41 (1st Cir.
> 2004). Had counsel been allowed, he certainly would have
> perfected Mr. Fernandez' objections.
> (Brief for the Appellant page 15)

The argument demonstrates that defense counsel was completely
unaware of the proper procedure for raising an objection to the
PSR. Moreover, the First Circuit Court of Appeals, in their
decision, deemed the Brief for Appellant untenable. A term seldom
if ever used to describe an appeal brief because of the obvious
negative impact of such a conclusion: "Finding his complaints
untenable, we affirm." (Decision No. 14-1367, May 20, 2015, pg 2).

Defense counsel is not only ineffective, he is clearly ignorant
of the law. Ineffective assistance of counsel ("IAC") requires an
inquiry of objective reasonableness rather than what counsel did
or did not know. **Bucci v. United States**, 662 F.3d 18, 31-32 (1st
Cir. 2011). Objectively reasonable counsel could make strategic
choices not to object to the procedure. But, as observed by both
the District and Circuit Courts that, where, as in this case,
counsel effectively admits ignorance of the "most fundamental
statutory provisions relating to sentencing" such failure of
knowledge by counsel may amount to constitutional ineffective
assistance of counsel. **Correale v. United States**, 479 F.2d 944,
949 (1st Cir. 1973).

- 7 -

A timely motion of objection to the PSR would likely have been meritorious and without repercussion to any other issue before the court or any other defense strategy. The clear attempt to raise the issue after the proceeding had closed is evidence that there was no strategy in not raising the objection. Counsel's failure to file such an objection was professionally unreasonable. See, e.g., **Gentry v. Sevier**, 597 F.3d 838, 851-52 (7th Cir. 2010); **Owens**, 387 F.3d at 608-09; **State v. Reichenbach**, 153 Wn.2d 126, 101 P.3d 80, 84, 87 (Wash. 2004); **State v. Silvers**, 255 Neb. 702, 587 N.W.2d 325, 334 (Neb. 1998); **Commonwealth v. Davis**, 1999 PA Super 289, 743 A.2d 946, 953 (Pa. Super. Ct. 1999).

There is no plausible strategic explanation for counsel's failure to file a timely objection to the enhanced sentence. It must be concluded that his performance was constitutionally deficient. **Kimmelman v. Morrison**, 477 U.S. 365, 385-86 (1986)(was prejudicial because counsel was ignorant of law and below prevailing professional norms). The failure to timely object and the untenable appeal brief prejudiced the Petitioner by doubling his sentence.


26. Finally, in the Court's Opinion and Order of Fernandez' motion under §2255, they state: "Counsel objected to both the term of imprisonment and the court's use of the PSI's account regarding the pointing of a firearm in determining such term. See id. at pp. 12-13. The court rejected counsel's argument on those matters. See id. at pp. 15-17." This statement is incorrect. The Court denied Tribilcock's attempt to object as being untimely and pointed

- 8 -

out to him that pursuant to Rule 32 the objection must be filed prior to the hearing. The merits of the issue were never addressed.

WHEREFORE, this is a case ripe with Constitutional issues clearly defined in the record. A COA chould be issued. Fernandez should be appointed competent counsel and the issue should be examined.

Respectfully Submitted,

Jean C. Fernandez-Garay, #40538-069
FCC Coleman Low, Unit A-4
P.O. Box 1031
Coleman, FL 33521

18/06/18
Date

## CERTIFICATE OF SERVICE

I, the undersigned, swear under the penalty of perjury that this motion was delivered in a pre-addressed, postage-paid envelope to the prison mailing authorities on the same day as signed. The petitioner requests that a copy of this motion be forwarded to all interested parties via the CM/ECF docketing system.

Affiant

1            IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF PUERTO RICO

3

4   UNITED STATES OF AMERICA,      )
                                   )
5                  Plaintiff,      )   Case No. 12-678
                                   )
6          vs.                     )
                                   )
7   JEAN C. FERNANDEZ-GARAY,       )
                                   )
8                  Defendant.      )

9

10                    SENTENCING HEARING

11      BEFORE THE HONORABLE JUAN M. PEREZ-GIMENEZ

12              OLD SAN JUAN, PUERTO RICO

13         THURSDAY, MARCH 13, 2014, 11:10 A.M.

14

15  APPEARANCES:

16  FOR THE PLAINTIFF:        KELLY ZENÓN
                              ASSISTANT U.S. ATTORNEY
17

18  FOR THE DEFENDANT:        THOMAS TREBILCOCK
                              ASSISTANT FEDERAL P.D.
19

20  Proceedings recorded by mechanical stenography, transcript
    produced by computer.
21  _____
                      ZULMA M. RUIZ, RMR
22              Federal Official Court Reporter
                      150 Carlos Chardón
23                  Hato Rey, PR   00918

24

25

```
 1            THE CLERK:  Criminal case 12-678, United States of
 2  America versus Jean C. Fernandez-Garay.
 3            Case called for sentence.
 4            On behalf of the Government, Assistant U.S. Attorney
 5  Kelly Zenón.
 6            On behalf of the defendant, Assistant Federal Public
 7  Defender Thomas Trebilcock.
 8            The Defendant is on his way to court, Judge, and will
 9  be assisted by the official court interpreter.
10            MS. ZENÓN:  The Government is ready to proceed, Your
11  Honor.
12            MR. TREBILCOCK:  Good morning, Your Honor.
13            (Pause.)
14            (Defendant present.)
15            THE COURT:  The matter is before the Court for
16  sentence this morning.  Counsel, have you read the presentence
17  report?
18            MR. TREBILCOCK:  We have, Your Honor.  We discussed
19  it with our client at MDC, at length, Your Honor.
20            THE COURT:  Mr. Fernandez, did your attorney explain
21  to you the content of the presentence report?
22            THE DEFENDANT:  Yes.
23            THE COURT:  Is there any corrections or amendments
24  that need to be made to the information contained in the
25  presentence report?
```

1          **MR. TREBILCOCK:**  I would only request one, Your

2   Honor, it would be -- it's not an issue of fact but it's an

3   issue of description, on Page 7, Paragraph 23, Your Honor.

4          **THE COURT:**  All right.

5          **MR. TREBILCOCK:**  If it were possible, Your Honor,

6   when we read the violation, it suggests, when I read it, it

7   suggests that my client tried to bring in substances, illegal

8   substances into a prison.  I think if we added some facts to

9   this and explained that he was arrested allegedly at a drug

10  point in a housing project, close to where there was a school.

11  Apparently that statute includes both prisons and school, if

12  I'm not incorrect.  I believe the Court could verify that with

13  the probation officer.  But if we could include some facts to

14  describe what exactly happened.

15         When I read this, immediately I was worried that he

16  had tried to introduce drugs into a prison, which is not what

17  occurred, Your Honor.  Since this is going to follow him

18  forever, if that were possible, Your Honor, it would be at the

19  bottom, some facts of what occurred, so that anyone who reads

20  this would know what occurred actually.

21         **THE COURT:**  Is that what he was charged with in local

22  court?

23         **MR. TREBILCOCK:**  Yes.  Well, he wasn't charged with

24  introducing drugs to a prison, Your Honor.

25         **THE COURT:**  What was he charged with?

1    MR. TREBILCOCK:  He was charged for selling drugs,
2  allegedly close to a school in a housing project.

3    THE COURT:  What we have to do is then find out the
4  actual charge and just change this.

5    MR. TREBILCOCK:  Perfect.  Your Honor, if possible as
6  well, in that same section, in this court usually when we read
7  that -- in that same charge -- that a case was disposed of for
8  Rule 64, Rule 64 has a number of ways to dispose of a case.
9  Sometimes it's by the terms which have expired.  In this case
10  it was disposed of due to failure of the Government to prove
11  probable cause, Your Honor -- I'm sorry, lack of probable
12  cause to proceed.  And that went inclusively to a second
13  stage, and the local court never found probable cause in this
14  case.  A judicial officer at the local level was able to
15  evaluate the proof against him, the evidence against him, and
16  determine no probable cause, Your Honor.

17    So instead of -- a description as to that would be
18  important as well, because sometimes we look at these cases and
19  we think they fell through the cracks due to procedural errors
20  at the local level, and that wasn't this case, Your Honor.

21    THE COURT:  Through your investigation, that's what
22  happened?

23    PROBATION OFFICER:  Michelle Acevedo from the U.S.
24  Probation Office to address the Court.

25    From our investigation, he had a dismissed charge

1  under Rule 64(n)(5), and he had another charge where there was
2  no probable cause found.  To be specific, there was no probable
3  cause for the charges of the defendant selling drugs near a
4  school.  And for the charges of using minors, it was dismissed
5  under Rule 64(n)(5).

6            **MR. TREBILCOCK:**  I'm unaware of exactly what an
7  (n)(5) is.

8            **MS. ZENÓN:**  Speedy trial, Your Honor.

9            **THE COURT:**  What?

10           **MS. ZENÓN:**  Speedy trial.

11           **MR. TREBILCOCK:**  Okay.  So we could probably have
12 both said in there, if we are going to amend it.

13           **THE COURT:**  64(n)(5) and 64 -- what's the other one?

14           **MS. ZENÓN:**  No, it has nothing to do with 64; it's
15 just that no probable cause was found based on the probation
16 officer's testimony.

17           **THE COURT:**  The defendant, at the bottom of 23, it
18 says date of offenses, 3-22-07, and no probable cause was
19 found.

20           **MR. TREBILCOCK:**  As to selling drugs close to a
21 school and using a minor.

22           **THE COURT:**  No, using a minor was speedy trial.

23           **MR. TREBILCOCK:**  Then let's put speedy trial for the
24 minor.  No probable cause as to selling drugs close to a
25 school, and regarding use of a minor --

1         **THE COURT:**  I'll tell her what to write.

2         **MR. TREBILCOCK:**  My apologies, Your Honor, I'm just

3 suggesting to the Court.

4         **THE COURT:**  It's Rule 64(n)(5) and the other one is

5 no probable cause.

6         **MR. TREBILCOCK:**  Thank you, Your Honor.  That would

7 be all regarding the PSR, Your Honor.

8         **THE COURT:**  Mr. Fernandez, any other amendments or

9 corrections?

10         **THE DEFENDANT:** No.

11         **THE COURT:**  Any from the Government?

12         **MS. ZENÓN:**  No, Your Honor.

13         **THE COURT:**  Counsel, is there anything you would like

14 to state to the Court on behalf of your client before I

15 pronounce sentence?

16         **MR. TREBILCOCK:**  Very briefly, Your Honor.

17         We have a 25-year-old young man who has lived

18 basically his entire life in a housing project in the area of

19 Carolina, Your Honor.  He has two daughters, he has a stable

20 relationship with his consensual partner, and he has a very

21 good relationship with his prior partner who is the mother of

22 his two children, Your Honor.  He provides very well for them,

23 Your Honor.

24         Your Honor, he was raised essentially by his mother;

25 his father, who was an employee of *Obras Publicas*, was never a

1 | part of his life.  We have, still, a young man who can be
2 | productive.  He's very smart, Your Honor.

3 | One thing that I noticed, Your Honor, even before
4 | coming in the case, he completed a GED within the BOP after
5 | being arrested in this case, he completed that prior to me even
6 | meeting him.  So he did it basically on his own, Your Honor.

7 | We would very respectfully request, Your Honor, that
8 | the Court sentence him based on the agreement of the parties to
9 | 60 months, based on the violation to 924(c), Your Honor.

10 | Thank you, Your Honor.

11 | THE COURT:  Thank you.

12 | Mr. Fernandez, do you care to state anything?

13 | THE DEFENDANT:  Yes.

14 | THE COURT:  Go ahead.

15 | THE DEFENDANT:  First of all, good morning.

16 | THE COURT:  Good morning.

17 | THE DEFENDANT:  I would like to apologize to my
18 | family for all the suffering that I may have caused upon them
19 | because of this process that I have been going through.

20 | And I would also like to thank my family for the
21 | support that they have offered.  That would be all.

22 | THE COURT:  Thank you.  Anything from the Government?

23 | MS. ZENÓN:  Your Honor, we stand by our
24 | recommendation of 60 months.

25 | THE COURT:  Thank you.

1         On October 22nd, 2013, defendant, Jean Carlos

2   Fernandez Garay pled guilty to Count 1 of the Indictment in

3   criminal case 12-678, charging him with violating Title 18,

4   United States Code, Section 924(c)(1)(A), which is a class "A"

5   felony, being in possession of a firearm during and in relation

6   to a drug trafficking crime.

7         The Court has used the November 1st, 2013, Edition of

8   the United States Sentencing Guidelines Manual to apply the now

9   advisory guideline adjustments.

10        The guideline for a Title 18, United States Code,

11  Section 924(c)(1)(A), is guideline 2K2.4.  That section states

12  that the defendant shall be sentenced to the minimum term of

13  imprisonment required by statute, which in this case is 60

14  months; the minimum, it's a mandatory minimum term of

15  imprisonment.  There's also a term of supervised release of not

16  more than five years and a fine up to $250,000.

17        The Court has reviewed the presentence investigation

18  report and finds that the same satisfactorily reflects the

19  components of this offense by considering its nature and

20  circumstances.  Furthermore, the Court has considered the other

21  factors found at Title 18, United States Code, Section 3553(a).

22        Before the Court is a 25-year-old U.S. citizen.

23  Mr. Fernandez has four previous dismissed cases and one

24  acquitted at state level.  He has ten siblings, and he has a

25  relationship -- an absent relationship with his father for the

1   past two years.  He's also the father of two young daughters.
2   He had an 11th grade high school education but has earned his
3   GED while being incarcerated.  Nonetheless, the Court also
4   takes into consideration the seriousness of the offense
5   charged.

6          This defendant was wearing a clown mask, was hiding
7   his identity.  He was carrying a .40 caliber Glock pistol
8   loaded with an extended magazine containing 22 rounds of .40
9   caliber ammunition.  And he also had a backpack containing 22
10  rounds of .40 caliber ammunition -- I'm sorry, in a backpack
11  containing 119 small bags of marijuana, 119 small bags of
12  cocaine, 262 parcels of heroin, 38 parcels of crack, and three
13  pills of an unknown substance.  A small notebook was also in
14  the backpack, which contained assorted drug sales.

15         Finally, during the intervention of the police,
16  Mr. Fernandez also pointed the gun that he was carrying at a
17  Police of Puerto Rico officer and threw the backpack towards
18  the officer.  The officer ran after him, at which point he saw
19  Mr. Fernandez throwing the gun to the ground.

20         Therefore, it is the judgment of this Court that
21  Mr. Fernandez-Garay is hereby committed to the custody of the
22  Bureau of Prisons to be imprisoned for a term of 120 months.

23         Upon release from confinement, he shall be placed on
24  supervised release for a term of five years under the following
25  conditions:  You shall not commit another federal, state or

1   local crime, and observe the standard conditions of supervised
2   release recommended by the Sentencing Commission and adopted by
3   this court.

4       You shall not unlawfully possess controlled substances
5   and refrain from possessing firearms, destructive devices,
6   other dangerous weapons.

7       You shall refrain from the unlawful use of a
8   controlled substance and submit to one drug test within 15 days
9   of release.  Thereafter, submit to random drug testing, not
10  less than three samples during the supervision period, not to
11  exceed 104 samples per year in accordance with the Drug
12  Aftercare Program Policy of the U.S. Probation Office as
13  approved by this court.  If any such samples detect substance
14  abuse, you shall participate in an inpatient or outpatient
15  substance abuse treatment program for evaluation and/or
16  treatment, as arranged by the probation officer until duly
17  discharged.  You will be required to contribute to the cost of
18  services rendered in an amount arranged by the probation
19  officer based on your ability to pay or the availability of
20  third party payment.

21      You shall provide the probation officer access to any
22  financial information upon request.  And you shall participate
23  in a vocational training and/or job placement program
24  recommended by the probation officer.

25      You shall submit your person, property, house,

1  residence, vehicle, papers, computers, other electronic
2  communications or data storage devices or media or office, to a
3  search conducted a United States probation officer at a
4  reasonable time and in a reasonable manner, based upon
5  reasonable suspicion of contraband or evidence of a violation
6  of a condition of release.  Failure to submit to such a search
7  may be grounds for revocation, and you shall warn any other
8  occupants that the premises may be subject to searches pursuant
9  to this condition.

10      You shall participate in vocational training and/or
11  job placement program recommended by the probation officer.

12      You shall cooperate in the collection of a DNA sample
13  as directed by the probation officer pursuant to the Revised
14  DNA Collection Requirements and 18 U.S.C. 3563(a)(9).

15      Having considered your financial condition, a fine is
16  not imposed.

17      A special monetary assessment in the amount of $100
18  will be imposed.  And pursuant to 18 United States Code,
19  Section 924(d), and 28 U.S.C. Section 2461(c), the defendant
20  agreed to forfeit all of his right, title, and interest in the
21  Glock pistol, loaded with one extended magazine containing 22
22  rounds of .40 caliber ammunition, and the same will be
23  forfeited to the United States.

24      You also have a right to appeal the judgment and
25  sentence in this case if you feel that the same was imposed in

 1  violation of the law, as a result of an incorrect application

 2  of the sentencing guidelines, or that it was unreasonable.

 3          Any Notice of Appeal must be filed in the district

 4  court within 14 days after the judgment is entered, and if you

 5  wish to appeal and you cannot pay for the cost of the appeal,

 6  you may apply for leave to appeal in forma pauperis.

 7          That is the sentence of the Court.

 8          Anything further, counsel?

 9          MR. TREBILCOCK:  Yes, Your Honor, very briefly.  I

10  believe the sentence was 120 months; is that correct, Your

11  Honor?

12          THE COURT:  That's correct.

13          MR. TREBILCOCK:  Your Honor, the basis for this

14  sentence, Your Honor, I suspect is the facts -- this Court's

15  fact finding, Your Honor.  And the sentence imposed, Your

16  Honor, exceeds even the minimum mandatory term that would have

17  been imposed in this case had the gun been discharged, Your

18  Honor.

19          This Honorable Court made reference to, I suspect, to

20  what is stated in the presentence report, Your Honor, at

21  Page 4, Paragraph 6, it states that, "Mr. Fernandez-Garay

22  allegedly pointed a weapon at a local police officer," Your

23  Honor.  First of all, that statement in the PSR, Your Honor,

24  with is in bold, was contained in the charging document, the

25  initial charging document only, Your Honor.  No evidence

1   whatsoever has been presented here by any local agents; anyone
2   who witnessed that or actually saw that, Your Honor.

3          That said, Your Honor, if we look at the Statement of
4   Facts to which Mr. Garay pled guilty, Your Honor, it says that
5   this individual had a small pack in his hand and a firearm in
6   the other.  Upon observing the officer, the individual
7   discarded the firearm.  Your Honor, he did not, at any time;
8   did he admit nor did the Government request that he admit to
9   having pointed a firearm at an individual.

10         And I would like to go back and think about that fact
11  for a second.  We have from the facts of this case that an
12  officer heard a gunshot.  They are in a small confined place in
13  a housing project; heard a gunshot; the officers traveled
14  towards where they heard the gunshot, and they saw Mr. Garay
15  coming around the corner, Your Honor.  Based on this fact
16  scenario, Your Honor, when a shot is fired, the first thing an
17  officer would normally do is pull out his gun, and if they saw
18  a young man pointing a gun at him, he wouldn't be with us
19  today, Your Honor.  I think this is an issue --

20         THE COURT:  That's speculative, counsel.

21         MR. TREBILCOCK:  Your Honor, the thing is that this
22  Court has broad discretion, Your Honor, to --

23         THE COURT:  But not based on speculation.

24         MR. TREBILCOCK:  Your Honor, but this Court would
25  have to find that fact by a preponderance of the evidence,

1  Your Honor, to increase his sentence.

2  THE COURT:  Counsel, you have had this presentence

3  report within the 35 days; have you not?

4  MR. TREBILCOCK:  Of course, Your Honor, but this

5  fact --

6  THE COURT:  Was there any objection as to that

7  paragraph specifically, that statement made in that paragraph?

8  There was no objection.

9  MR. TREBILCOCK:  Your Honor, there is no need to

10  object to that paragraph, Your Honor.

11  THE COURT:  Why not?

12  MR. TREBILCOCK:  Because that is part of the charging

13  documents.  If we go to paragraph, Your Honor --

14  THE COURT:  Counsel, that's what the charging

15  documents say.  My probation officer makes investigations and

16  they can include other relevant evidence that is not in the

17  charging documents, because the Government charges whatever

18  they think must be charged, but it's the probation officer who

19  does their research or the investigation for the Court.  And

20  according to the probation officer that prepared this report,

21  she interviewed the agent, and that is the statement of the

22  agent.

23  Now, if you felt that that was not correct, you could

24  have objected to that.  You had the presentence report.  And

25  then maybe you could have brought in the agent or do other

1    matters that would clear up that point.

2              I think it's clear from what the probation officer

3    in this case.

4              MR. TREBILCOCK:   Your Honor, I respectfully, very

5    respectfully, Your Honor, disagree.

6              THE COURT:   I know you do, but that's why you're

7    going to have an appeal, he is going to have a right to

8    appeal.

9              MR. TREBILCOCK:   Please allow me to finish preparing

10   my record, Your Honor.   I believe that if --

11             THE COURT:   You have prepared it, counsel.

12             MR. TREBILCOCK:   I would like to prepare it a little

13   more, Your Honor.

14             THE COURT:   You've already stated what you need to

15   state to maintain the issue on appeal.

16             MR. TREBILCOCK:   I would like to say a little more,

17   if possible.

18             THE COURT:   Don't say anything speculative because

19   I'm not going to allow anything speculative.

20             MR. TREBILCOCK:   I'm not saying anything speculative,

21   Your Honor.   What I'm saying is --

22             THE COURT:   What you said was speculative, if a

23   policeman heard a gunshot and they would see an individual

24   coming towards him, that he would have pulled his gun.  That's

25   speculative because in this case that did not happen, sir.

1           MR. TREBILCOCK: Your Honor, what I'm saying, I

2  believe that if the Court is going to consider that fact,

3  obviously what we're doing is we're circumventing --

4           THE COURT: We're not. That fact is there. You had

5  the fact in the presentence report. The same way that you

6  objected to the way that the state cases were dismissed,

7  either under 64(n)(5), or that there was no probable cause

8  found, you could have said, "Judge, we object to this, that he

9  pointed a gun at a police officer." You could have objected

10  to that. It wasn't objected.

11           MR. TREBILCOCK: Your Honor --

12           THE COURT: Counsel, you have your right to appeal.

13  You are going to appeal. Okay?

14           MR. TREBILCOCK: But if I cannot complete the record,

15  Your Honor --

16           THE COURT: You've already completed it. You just

17  want to hear yourself talk.

18           MR. TREBILCOCK: It's not that I want to hear myself

19  talk.

20           THE COURT: Court is adjourned.

21           MR. TREBILCOCK: It's my duty, Your Honor.

22           THE COURT: You've already stated it, counsel.

23           MR. TREBILCOCK: The Court is not allowing me to put

24  on my record.

25           THE COURT: Yes, I am allowing you. You've put it on

1  the record, counsel.

2          MR. TREBILCOCK:  This is a violation of

3  Mr. Fernandez's due process and Sixth Amendment process.

4          THE COURT:  Thank you.  You can appeal that.

5          MR. TREBILCOCK:  Thank you, Your Honor.

6          THE COURT:  You're welcome.  You may withdraw.

7

8          (Whereupon at 11:30 a.m. this hearing was concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2

3          I, ZULMA M. RUIZ, Official Court Reporter for the

4    United States District Court for the District of Puerto Rico,

5    appointed pursuant to the provisions of Title 28, United States

6    Code, Section 753, do hereby certify that the foregoing is a

7    true and correct computer-aided transcript of proceedings had

8    in the within-entitled and numbered cause on the date herein

9    set forth; and I do further certify that the foregoing

10   transcript has been prepared by me or under my direction.

11

12

13

14

15

16
                           S/Zulma M. Ruiz
17                    _____

18                         Official Court Reporter

19

20

21

22

23

24

25

P.O. Box 1031 Coleman
·335 21

Attn: Margaret Carter, Clerk of Court
United States Court of Appeals for the First Circuit
John Joseph Moakley United States Courthouse
1 Courthouse Way Suite 2500
Boston, MA 02210

JUSTICE SERVED
USPS